FILED
JUN 27 2014
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>TIMOTHY C. GOING,  )<br>  )<br>Defendant.  ) | CRIMINAL NO. 3:14-mj-3059-DGW<br><br>Title 18, United States Code,<br>Sections 2251(a) and 2252(a)(4)(B) |

## CRIMINAL COMPLAINT

I, Federal Bureau of Investigation Special Agent Joseph Murphy, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### COUNT 1

#### ATTEMPTED SEXUAL EXPLOITATION OF A MINOR

Between on or about November 1, 2013, and on or about November 2, 2013, in St. Clair County, within the Southern District of Illinois,

**TIMOTHY C. GOING,**

defendant herein, did knowingly use and attempt to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate commerce; all in violation of Title 18, United States Code, Section 2251(a).

### COUNT 2

On or about May 9, 2014, in Wayne County, within the Southern District of Illinois,

**TIMOTHY C. GOING,**

defendant herein, did knowingly possess one or more matters, including, but not limited to, a MSI Generic homemade computer, with an ASUS motherboard, and an AMD processor sticker and a MSI-Multi-Media sticker on the front of the computer tower, bearing no serial number; and a HP Pavilion G7, laptop computer, bearing serial number 5CD2080RVH, that contained visual depictions that had been shipped and transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, and which were produced using materials which had been mailed or so shipped and transported, by any means, including by computer; the production of which involved the use of a minor engaging in sexually explicit conduct, and which visual depictions were of such conduct; all in violation of Title 18, United States Code, Section 2252(a)(4)(B).

## AFFIDAVIT

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

1. I am a Special Agent (S/A) with the Federal Bureau of Investigation (FBI) and have been so employed for approximately sixteen years. Prior to joining the FBI, I had eight years of prior law enforcement experience as a police officer and detective with the Metropolitan Police Department, City of St. Louis, Missouri. I am currently assigned to the Springfield Division of the FBI, Fairview Heights Resident Agency, Springfield Child Exploitation Task Force (SCETF). The SCETF is an FBI sponsored task force assembled to combat a variety of cyber-related crimes in the Metro-East area. It is comprised of law enforcement personnel from approximately nine (9) different local, state, and federal agencies who have jurisdiction and display an interest in working together to combat cyber-crime offenses in this area. I have been

assigned to this task force for two months. Prior to this, I was assigned to the FBI's Metro-East Public Corruption Task Force for approximately five (5) years.

2. On May 5, 2014, at approximately 10:00 p.m., Illinois State Police (ISP) Special Agent Rick White received a call from the Principal of Fairfield Community High School. The Principal informed Special Agent White that, approximately 45 minutes earlier, a night janitor at the High School discovered a hidden camera in the girls' locker room. The Principal reported that the Assistant Principal went to the school, secured the locker room doors, and ensured that no one touched or moved the camera. The next day, Special Agent White and another ISP agent went to the High School and met with the Principal and Assistant Principal. A crime scene investigator was contacted to collect the camera and any latent evidence from the locker room.

3. That same day, the agents interviewed the night janitor, K.G., who reported that, on May 5, 2014, he waited until the softball players were gone before he checked the girls' locker room. He said that, when he entered a bathroom stall, he noticed what appeared to be a video camera on a ledge above the stalls. He went to get a 5 gallon cooler to stand on to get a better view, and saw that the camera had wiring going from it to a black box which had a SD card slot in it and an antennae. He said that he did not touch anything, and that he immediately tried to contact his supervisor. He also asked another night janitor, K.B., to come into the locker room to see what he had found. K.G. stated that his supervisor told him to take pictures of the camera, wiring and black box and send them to him. The supervisor also informed him that the Assistant Principal was on his way. When the Assistant Principal arrived, he took additional photographs, and then directed K.G. to secure both doors to the girls' locker room.

4. On May 8, 2014, ISP Forensic Technician Jeff Knauer began a forensic examination of the micro SD card removed from the video camera hidden in the girls' locker room. Knauer discovered several video clips from May 5, 2014, showing teenage girls, all of

whom are obviously minors, using the locker room. The camera appears to have been placed to capture the top half of the bathroom stall, and it captured minors in various states of undress.

5. Knauer also recovered a video clip from May 2, 2014, which showed the installation of the video camera in the girls' locker room by a man wearing shorts and white ankle socks at approximately 10:28 p.m. Finally, Knauer recovered additional video clips that had been deleted. Several of the clips contained additional locker room footage from March 13-16, 2014. In these clips, the video camera is facing the girls' changing area, and appears to have been hidden in the pipes above the coach's door. It is believed that the video camera was moved to a different location because the footage from this location showed very little nudity. Knauer also recovered deleted video clips from March 2013 that appeared to be from the school locker room. Finally, Knauer recovered video clips of two (2) individuals, one of whom appeared to be a minor, changing and showering in what appeared to be a hotel bathroom.

6. Special Agent White contacted the Assistant Principal regarding the hotel bathroom footage. The Assistant Principal reported that **Timothy C. GOING**, who was the cross country coach and the assistant track coach and also taught math at Fairfield Community High School, took the cross country track team, which included, on that trip, a minor under the age of 18, identified herein as Minor 1, to Sectionals in Edwardsville, Illinois, in November 2013. **GOING** and the team stayed at a Super 8 Hotel in Fairview Heights, Illinois, within the Southern District of Illinois, on November 1, 2013, checking out on November 2, 2013. **GOING** assigned the rooms in which the members slept, including the room that was to be occupied by Minor 1 and an adult attendant related to Minor 1.

7. On May 9, 2014, the Assistant Principal and Special Agent White reviewed the school's surveillance video from May 2, 2014. The video revealed **GOING**, wearing black shorts, a black hoodie with Fairfield Cross Country on the front, a gray stocking cap, multi-colored shoes, and white ankle socks, entering the school at approximately 10 p.m. carrying a camouflage backpack. **GOING** immediately ran into K.G in the breezeway, and talked to him briefly before leaving. He then went to his classroom, stayed there approximately 15 minutes, and left the building through the northwest door. He then walked along the north side of the building and, at approximately 10:21 p.m., re-entered the school through the north entrance, looking behind him as if to see if anyone was watching, and turned into the dark gym area. At approximately 10:28 p.m., **GOING** is seen leaving the dark gym area carrying his shoes. A different surveillance camera captured **GOING** at approximately 10:28 p.m. as he exited through the southeast door, sat down on the stairs, put on his shoes, and then walked to his truck and left. The fact that **GOING** was wearing only socks when he installed the video camera in that location on May 2, 2014, was consistent with the footage captured by his own hidden video camera on that date which showed a man wearing shorts and ankle socks installing the camera. A printout of **GOING**'s key fob usage on May 2, 2014, is consistent with the video footage.

8. **GOING** was subsequently arrested and charged by the Wayne County State's Attorney with unauthorized videotaping of students as well as burglary to the school. He is currently being held on a $250,000 bond in the Wayne County Jail. Fairfield Community High School turned over to the Illinois State Police electronic media to which **GOING** had access while employed there. State search warrants were obtained and executed for **GOING**'s residence and vehicle located in Wayne County. Numerous electronic media devices were

seized from his residence and were submitted to the Illinois State Police forensic laboratory for forensic examination. Found inside **GOING**'s truck was a gray stocking cap similar to the stocking cap **GOING** is seen wearing in the school surveillance video and an mp3 player.

9. While executing the search warrant on **GOING**'s residence on May 9, 2014, a close associate of **GOING** who was present (Witness 1) agreed to speak with Special Agent White. When Special Agent White told Witness 1 what **GOING** was charged with, Witness 1 stated that **GOING** was very "good with technology," and that he had "built his own computer." Witness 1 also observed that he was "back and forth to school at odd hours with [what Witness 1 assumed to be] grading." Finally, when told about the hotel bathroom footage, Witness 1 stated that **GOING** took the cross country team to some meets in the Fall of 2013 that required overnight stays in a hotel.

10. ISP Forensic Technician Knauer reported that the video camera recovered from the girls' locker room did not appear to be the same video camera used to surreptitiously record Minor 1 and an adult attendant at the Super 8 Hotel in Fairview Heights, Illinois, within the Southern District of Illinois. He said that either the micro SD card he was analyzing was in the other video camera as it recorded the video of Minor 1 or the video was later transferred to this micro SD card. In any event, the video would have been produced on this micro SD card, either directly or through a transfer of data, using materials that had been shipped, mailed or transported in interstate or foreign commerce because the micro SD card was manufactured in either China or Japan.

11. On June 2, 2014, Minor 1 was interviewed at a Child Advocacy Center. Minor 1 stated that **GOING** was Minor 1's coach for the cross country team, and recalled taking an

overnight trip with the cross country team for a meet at Metro-East Lutheran High School when it was cold. Minor 1 said that an adult attendant accompanied Minor 1 on the trip. Minor 1 said that the only other adult present during the overnight stay was **GOING**. Minor 1 said that, on this occasion, while Minor 1 and the others waited, **GOING** told them that he was going to get the keys and check all of the rooms to make sure that none of the rooms were damaged so that the school could not be billed for it later. He then returned and gave them the keys to their respective rooms. Before checking out the next day, Minor 1 said that **GOING** had everyone wait in the lobby while he said that he was going to do a final walk through of the rooms to check for any damage to the rooms and to make sure no personal belongings were left in the rooms. Minor 1 said that he had done this same thing on other overnight trips involving the track and/or cross country teams. Minor 1 identified Minor 1 and Minor 1's adult attendant from still photographs taken from the November 1, 2013, video.

12. ISP Forensic Technician Knauer was able to reconstruct the video clips of the surreptitious recording of Minor 1 and the adult attendant who accompanied Minor 1 at the Super 8 Hotel in Fairview Heights on November 1, 2013. It appears from the video that the camera was either hidden inside of a smoke detector device which he installed inside the bathroom or was in the shape of a smoke detector device because the device can be seen in the mirror of the bathroom during this video but was not present when agents photographed the room at a later date, after confirming that the bathroom had not been remodeled since November 1, 2013. The camera was placed behind the bathroom door and would activate once the bathroom door was closed. The camera was directed towards the bathroom mirror. The first two video clips are of Minor 1 as Minor 1 undresses and prepares to take a shower.

13. Based on the investigation, my training and experience, and consultation with members of the SCETF task force as well as ISP Special Agent Rick White, it is clear from the video clip of Minor 1 that **GOING** took a substantial step towards using Minor 1 to engage in sexually explicit conduct - the lascivious display of genitals - for the purpose of producing a visual depiction of such conduct, and that he had the specific intent to do so, by planting a video camera in the bathroom of the hotel room he specifically assigned to Minor 1 so that he could surreptitiously record Minor 1 as Minor 1 entered and exited the shower when he had a limited amount of time in which to set up the hidden camera and limited locations in which to hide it. **GOING**'s intent is evidenced by the fact that he had the cross country team wait to enter the rooms until he could first "check them for any damage." It is reasonable to assume that it was at this time that he placed the video camera in a smoke detector which he put on the wall, or used a camera in the shape of a smoke detector, in the bathroom of the room that he knew he was going to assign to Minor 1, aiming the video at the bathroom mirror in an attempt to capture as much nudity of Minor 1 as possible. It is also supported by the fact that he had everyone wait in the lobby while he once again "inspected" the rooms for any damage and to ensure no personal belongings were left behind before turning in the keys. Again, the reasonable inference is that he used this opportunity to remove the video camera. This is borne out by the fact that the video was recovered on the micro SD card in May 2014, so he must have removed the video camera in order to have this video available to him. The most compelling proof of his intent, however, is the surreptitious nature of the recording. **GOING** hid the video camera in a location in which he would not have normally had access, a bathroom where the minor would feel comfortable undressing and using the mirror. Finally, additional proof of **GOING**'s intent to produce child

pornography is evidenced by his further attempts to capture images of minors in various stages of nudity by surreptitiously recording them first in the changing area of the locker room, and then in a large bathroom stall in the locker room.

14. During the forensic examinations of a MSI Generic homemade computer, with an ASUS motherboard, and an AMD processor sticker and a MSI-Multi-Media sticker on the front of the computer tower, bearing no serial number; and a HP Pavilion G7, laptop computer, bearing serial number 5CD2080RVH, both of which were removed from **GOING**'s residence on May 9, 2014, in Fairfield, Illinois, within the Southern District of Illinois, Knauer recovered numerous visual depictions of minors engaging in sexually explicit conduct on both pieces of equipment. Some of the images had obviously been downloaded via the internet, a facility of interstate commerce. In addition, some or all of the components of the MSI Generic homemade computer, with an ASUS motherboard, and an AMD processor sticker and a MSI-Multi-Media sticker on the front of the computer tower, bearing no serial number; and a HP Pavilion G7, laptop computer, bearing serial number 5CD2080RVH, were manufactured outside the State of Illinois, and therefore had to have affected interstate commerce when shipped or transported to Illinois prior to May 9, 2014. The images depicted involved some prepubescent females (12 or younger) and some of whom appeared to be a little older. Many of the images were obtained from websites that apparently distribute child pornography, and depicted sexual interactions between minors and adults, as well as sexual interactions between minors, and the lascivious display of the minors' genitals.

15. Based on my training and experience, **GOING** knew that these matters contained visual depictions of minors engaging in sexually explicit conduct because these images were mixed within legal images which would indicate that he knew what the image was when he saved it. In addition, the fact that **GOING** tried to delete the images after the video camera evidences his consciousness of guilt. He knew that these images were of minors engaging in sexually explicit conduct and wanted to get rid of them before his computers were searched.

**FURTHER AFFIANT SAYETH NAUGHT.**

Special Agent Joseph Murphy
Federal Bureau of Investigation

State of Illinois        )
                         ) SS
County of St. Clair      )

Sworn to before me and subscribed in my presence on the 27th day of June, 2014, at East St. Louis, Illinois.

DONALD G. WILKERSON
United State Magistrate Judge

STEPHEN R. WIGGINTON
United States Attorney

ANGELA SCOTT
Assistant United States Attorney